UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERVIN STUBBS,

        Petitioner,                      Hon. Janet T. Neff

v.                                            Case No. 1:13-CV-47

JOHN PRELESNIK,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Stubbs' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Stubbs' petition be **denied**.

**BACKGROUND**

As a result of events which occurred on January 24, 2010, Petitioner was charged with third degree criminal sexual conduct. (Plea Transcript, April 2, 2010, 3-6). Petitioner was also charged with being an habitual felon and with failing to register as a sex offender as a result of a previous conviction. (Tr. 4). Petitioner subsequently entered into a plea agreement pursuant to which he agreed to plead guilty to third degree criminal sexual conduct in return for which the prosecution agreed to: (1) dismiss the habitual offender charge; (2) dismiss the charge for failing to

1

register as a sex offender; and (3) recommend that Petitioner be sentenced "at the low end of the sentencing guidelines." (Tr. 4). Petitioner was sentenced to serve 51 months - 15 years in prison. (Sentencing Transcript, May 3, 2010, 13). Petitioner subsequently moved in the trial court, without success, to withdraw his guilty plea. (Dkt. #6, 17). Petitioner later moved in the Michigan Court of Appeals for leave to appeal, asserting the following claim:

> I. The trial court abused its discretion by denying Defendant-Appellant's motion to withdraw guilty plea, where plea was not knowingly or intelligently made due to ineffective assistance of counsel.

The Michigan Court of Appeals denied Petitioner leave to appeal "for lack of merit in the grounds presented." *People v. Stubbs*, Case No. 305366, Order (Mich. Ct. App., Sept. 29, 2011). Asserting the aforementioned claim, as well as two additional claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Stubbs*, Case No. 143963, Order (Mich., Mar. 5, 2012). On January 15, 2013, Petitioner initiated the present action in which he asserts the claim identified above.

## STANDARD OF REVIEW

Stubbs' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

>    (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
>    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

3

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly

4

established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

5

**ANALYSIS**

I.	**Ineffective Assistance of Counsel**

Petitioner argues that he is entitled to relief because his plea "was not knowingly or intelligently made where counsel was ineffective in advising [him] to plead guilty without providing [him] with witness statements or discovery materials (outside of his own confession) prior to pleading guilty." Petitioner argues that the information which was allegedly withheld from him "contained impeachment material either about the identification or about the event itself."

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's

representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Thus, to establish prejudice in the context of a guilty plea, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also*, *Lafler v. Cooper*, 132 S.Ct. 1376, 1384-85 (2012) (quoting *Hill*, 474 U.S. at 59).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

7

*Id.* (internal citations omitted).

While the record contains several police reports, Petitioner has not specifically identified the reports which he was allegedly not provided. This failure is of no consequence, however, because a review of the witness statements reveals that it is unreasonable for Petitioner to assert that had he been provided all the information in question he would have withdrawn his guilty plea and gone to trial. Thus, even if Petitioner's counsel was deficient for allegedly not providing Petitioner with all of the police reports in this matter, Petitioner's claim nevertheless fails because he cannot establish that he was prejudiced by such. The police reports in question reveal the following.[1]

On the afternoon of January 24, 2010, a police officer spoke with Jasmine Merritt who was fifteen (15) years of age at the time. Merritt reported that the previous evening she attended a party at the residence where Petitioner lived with his mother. Merritt reported that while at the party she had been sexually assaulted, but that she did not know the identity of her assailant(s). Merritt did, however, describe the room in which the assault occurred. According to Merritt, she was assaulted in a room with "neon style Christmas lights strung around the top of the room" which made it "very difficult to see." Police again interviewed Merritt on January 27, 2010. Merritt reiterated that she did not know the identity of the person(s) who sexually assaulted her, but Merritt also related that earlier in the evening she had consensual sex with Petitioner, who was twenty-five (25) years of age at the time.

On January 27, 2010, police interviewed Petitioner's mother, Brenda Stubbs. Stubbs reported that on the night in question "there was some partying going on" with Petitioner and several

---

[1] The police reports in question are contained within docket entry #17.

8

other people and that the party "carried on into the very early morning hours." Stubbs reported that at approximately 4:00 a.m. she "woke up after she heard a girl screaming from the back bedroom." Stubbs got up and called the police. While Stubbs waited for the police to arrive, she witnessed Petitioner, a girl, and "some other guys" all run from the back bedroom and out of the apartment. Police subsequently executed a search warrant at Brenda Stubbs' residence. In one of the bedrooms, police observed "Christmas lights hanging around the interior" as described by Jasmine Merritt. A search of this room revealed the presence of an empty condom wrapper.

Later the same day, the police interviewed Petitioner, who acknowledged having sex with Jasmine Merritt on the night in question. Police officers then conducted a taped interview of Petitioner in which he again acknowledged having sex with Merritt. Petitioner defended his actions on the grounds that their sexual encounter was consensual and he thought that Merritt was "of age." Petitioner stated that he made his statement of his own free will without any "force" or "tricks."[2]

Pursuant to Michigan law in effect as of January 24, 2010, an individual was guilty of criminal sexual conduct in the third degree if he engaged in sexual penetration with another person who was "at least 13 years of age and under 16 years of age." Mich. Comp. Laws § 750.520d(1)(a). A conviction for this offense is "punishable by imprisonment for not more than 15 years." Mich. Comp. Laws § 750.520d(2). Petitioner was also charged with having been previously convicted of three felonies (i.e., habitual offender fourth). Mich. Comp. Laws § 769.12. Pursuant to this provision, if a person previously convicted of three felonies subsequently commits a fourth felony

---

[2] Petitioner continues to acknowledge that he had sex with Merritt on the night in question. In an affidavit submitted to this Court in support of the present action, Petitioner acknowledges that he had sex with Merritt, but requests relief on the ground that he was unaware that Merritt was 15 years old and, moreover, would not have had sex with her had he known her age. (Dkt. #1).

9

which is (as a first offense) punishable by imprisonment of five years or more, that person is instead punishable by "imprisonment for life or for a lesser term." Mich. Comp. Laws § 769.12(1)(b). In other words, if the prosecution established that Petitioner had, in fact, been convicted of three previous felonies, a conviction on the third degree criminal sexual conduct charge in this case would have subjected Petitioner to life in prison. The Court notes that there exists nothing in the record calling into doubt the charge that Petitioner had been convicted of three prior felonies. Moreover, Petitioner advances no argument calling into question this particular charge.

Petitioner faults his attorney for allegedly failing to provide him with all of the witness statements before advising him to accept a plea agreement. Petitioner has no evidence to support this assertion, but the Court need not concern itself with this question because even if it is assumed that counsel failed to provide Petitioner with the information in question, Petitioner cannot establish that he was prejudiced by his attorney's deficient performance.

Jasmine Merritt unequivocally reported to the police that she had sex with Petitioner. Petitioner subsequently confirmed that he had sex with Merritt. Petitioner suggests that Merritt provided inconsistent statements about the events in question and likewise indicated an inability to identify her assailant. Petitioner's argument fails to distinguish between the two separate incidents which occurred on the night in question.

Merritt reported to the police that she had two sexual encounters on the night in question. She reported first having consensual sex with Petitioner after which she fell asleep only to be later awakened by an unidentified man sexually assaulting her. Petitioner is correct that Merritt was unable to identify the man who sexually assaulted her, but Merritt's identification of Petitioner as the man with whom she had consensual sex earlier in the evening was unequivocal. Likewise,

while Merritt's description of her assault was arguably inconsistent in certain respects, her statements regarding her sexual encounter with Petitioner earlier in the evening suffer from no such shortcoming.

Third degree criminal sexual conduct, premised on having sex with a 15 year old, is a strict liability offense. *See People v. Adkins*, 2006 WL 142120 at *1 (Mich. Ct. App., Jan. 19, 2006). Thus, Petitioner's repeated assertions that he thought Merritt was "of age" are utterly irrelevant. *Id.* ("a defendant's reasonable or good-faith mistake of fact concerning the victim's age is not a defense"). In sum, the statements by Merritt and Petitioner more than establish that Petitioner committed third degree criminal sexual conduct which, given Petitioner's status as an habitual felon, subjected him to a sentence of life in prison. While the various witness statements arguably contain impeachment material concerning Merritt's allegations that she was sexually assaulted after her sexual encounter with Petitioner, the Court fails to discern how such advances Petitioner's cause. The impeachment value of the statements at issue is, at best, questionable and, moreover, the statements concern a distinct crime occurring at a separate time.

Given the circumstances, including Petitioner's relatively young age, it was eminently reasonable for Petitioner to accept a plea agreement that subjected him to a prison sentence of no more than 15 years in prison as opposed to going to trial on a charge for which conviction seemed almost certain and which could have resulted in a sentence of life in prison. The trial judge rejected Petitioner's ineffective assistance of counsel claim. Implicit in this determination is that Petitioner failed to demonstrate that there existed a reasonable probability that absent his attorney's alleged errors he would have pleaded not guilty and insisted on going to trial. The Court further notes that Petitioner obtained an enormous benefit by accepting the plea agreement. In light of the authority

above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.        Voluntariness of Guilty Plea**

Petitioner asserts that his attorney's allegedly ineffective assistance renders his subsequent guilty plea involuntary. As discussed above, however, Petitioner's ineffective assistance of counsel claim is without merit. Moreover, to the extent that Petitioner asserts that his guilty plea suffers from some other infirmity, the Court finds that such arguments are likewise without merit.

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The *Boykin* Court identified certain rights (identified immediately above) which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only

where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the

13

alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

The terms of the plea bargain were detailed on the record. (Plea Transcript, April 2, 2010, 3-8). Specifically, Petitioner agreed to plead guilty to third degree criminal sexual conduct and in return the prosecution agreed to: (1) dismiss the habitual offender charge; (2) dismiss the charge for failing to register as a sex offender; and (3) recommend that Petitioner be sentenced "at the low end of the sentencing guidelines." (Tr. 4). Petitioner testified that he understood the charges against him, as well as the possible penalty that could be imposed if convicted. (Tr. 4-5). Petitioner testified that he executed an Advice of Rights form detailing the various rights he would be surrendering if he pleaded guilty. (Tr. 5). Petitioner testified that he understood that by pleading guilty he would be surrendering the rights described therein. (Tr. 5-6). Petitioner testified that his decision to plead guilty was voluntary and that nobody had threatened him or promised him anything other than what was stated on the record. (Tr. 4-8). Considering the totality of the circumstances, any claim that Petitioner's guilty plea was not offered voluntarily, knowingly, and intelligently is

without merit.

Accordingly, the Court concludes that the denial of this claim by the state courts was neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, such was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the undersigned recommends that this particular claim be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Stubbs' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  May 15, 2015                                     /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge